UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| CLIFFORD PITTMAN, ) | |
| ) | |
| Plaintiff, ) | Civil No. 08-265-ART |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | **MEMORANDUM OPINION & ORDER** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant, ) | |
| ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Clifford Pittman brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the Commissioner of Social Security's ("Commissioner") administrative decision denying Pittman's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons that follow, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's.

## BACKGROUND

On January 11, 2007, Pittman filed his application for DIB and SSI.[1]  Transcript ("Tr.") 89, 92. Therein, Pittman alleges a disability beginning on February 2, 2006, the date on which he stopped working after a seizure. *Id.* Pittman's application was denied both initially and upon reconsideration. Tr. 9.

Subsequently, Administrative Law Judge Donald A. Rising ("ALJ") conducted a hearing

---

[1] Because Pittman has filed applications for both disability and disability insurance benefits and supplemental security income, the statutes and regulations for both types of claims apply. But the statutes and regulations relevant for this case are identical. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

on January 3, 2008. *Id.* During the hearing, the ALJ heard testimony from Pittman, his sister Connie Wagers, and William Ellis, a vocational expert ("VE"). *Id.* Pittman, who was 54 years old at the time of the hearing, *see* Tr. 37, has a high school equivalency education and past relevant work experience with an oil and gas company where he performed various jobs including as a compressor operator, supervisor, and well tender. Tr.11. At the hearing, Pittman testified that he stopped working in February of 2006 because he had been having seizures. Tr. 40. Because he was on medication, Pittman testified he had not had any additional seizures since that date. *Id.* He also testified that he had seen a therapist because he had trouble remembering things, had trouble being around people, and had back pain. Tr. 45–46.

The medical records provided to the ALJ contain the following additional information: Pittman was admitted to Marymount Medical Center on October 21, 2005, with "tonic and clonic convulsions X 2" and was placed in the Intensive Care Unit. Tr. 172. He was diagnosed with "herpes encephalitis, increased liver function tests, alcohol abuse, headache (improved), and hyponatremia (resolved)." Tr. 12 (citing Tr. 171–232). A chest x-ray performed on October 22, 2005, showed no acute pulmonary disease. Tr. 173. After he was released from the hospital, Pittman began seeing Dr. Arif Khan, and it appears that his health improved. *See* Tr. 270–84.

Then, on February 2, 2006, he began shaking and jerking at work and went initially to Baptist Regional Medical Center, where he had another seizure. Tr. 12, 249. He was then transferred to the University of Kentucky Hospital where he remained until February 6, 2006. *Id.* He began taking Dilantin, an anti-seizure medication, and did not have another seizure during his hospitalization. *See* Tr. 273. Dr. Khan's records indicate that Pittman had no other seizures after February 2, 2006, and that his condition had generally improved. *See* Tr. 271–73. On May 30,

2006, he noted that Pittman's seizure disorder was under control with his present medications and that he could return to work on June 6, 2006, without restrictions. Tr. 272. Pittman also saw Dr. Joseph Zerga with Commonwealth Neurology Services, PSC, who commented that Pittman could seriously injure himself at his job if he had a seizure at work and that he hoped Pittman's employer would make accommodations for him because he could basically do anything that did not involve a lot of driving or working around heavy equipment, which could cause him harm if he had another seizure. Tr. 268–69. Finally, Pittman went to Comprehensive Care for his memory and social problems and was diagnosed with a mood disorder. *See* Tr. 285–90, 404–11. He was treated with Lexpro, and then with Prozac, which seemed to generally improve his symptoms. *See* Tr. 407.

Dr. Barry Burchett saw Pittman on consultation chiefly for back and shoulder pain. *See* Tr. 291–97. He diagnosed Pittman as having chronic lumbar pain without significant radiopathy and a possible rotator cuff tear of the left shoulder. Tr. 294. Dr. Kenneth Starkey also saw Pittman on consultation to evaluate his mental health and seizure disorder. *See* Tr. 298–306. Dr. Starkey concluded that Pittman had alcohol dependence in partial remission and nicotine dependence and that he had some mild psychological symptoms. Tr. 304.

### ALJ ANALYSIS

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] First, if a claimant is working at a substantial gainful activity, she is not

---

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four,

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

In this case, at step one, the ALJ found that Pittman has not engaged in substantial gainful activity since the alleged onset date of disability. Tr. 11. At step two, the ALJ found that Pittman's medically determinable "impairments of a history of seizures secondary to herpes encephalitis (well-controlled with medication), a mood disorder, not otherwise specified, and a history of alcohol dependance" were "severe" based on the standards set forth in the Regulations, *see* 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), 416.921. Tr. 11. At step three, the ALJ found that Pittman's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. Tr. 15. At step four, the ALJ found that Pittman possessed

---

the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) with some exceptions. Tr. 16. Specifically, the ALJ found that Pittman cannot perform "more than occasional overhead lifting with the left upper extremity and must avoid commercial driving as well as exposure to unprotected heights and dangerous or moving machinery[,]" and that "[h]e is further limited to the performance of simple and detailed tasks in object-focused work settings where contact with others is infrequent and casual in nature." *Id.*

Based upon that finding, the ALJ concluded that Pittman was unable to perform his past relevant work. Tr. 18. However, at step five, the ALJ determined that there were a significant number of jobs in the economy that Pittman could perform. Tr. 18–19. Accordingly, on April 30, 2008, the ALJ issued an unfavorable decision, finding that Pittman was not disabled, and therefore, not entitled to DIB and SSI. Tr. 20. The Appeals Council declined to review the ALJ's decision, Tr. 1. Thus, the ALJ's decision became the final decision of the Commissioner and Pittman now seeks judicial review in this Court. The parties have filed cross motions for summary judgment, *see* R. 10; R. 11, which are now ripe for the Court's review.

## STANDARD OF REVIEW

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319–20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes

that there is a zone of choice within which decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545.

## DISCUSSION

On appeal to this Court, Pittman argues that the ALJ erred in two ways. Pittman argues that the ALJ erred in his determination of Pittman's residual functional capacity both because he improperly evaluated claimant's testimony regarding his pain, symptoms, and limitations and because he failed to consider Pittman's pulmonary impairment. *See* R. 10 at 8–9. Pittman also argues that the ALJ erred in the way he posed the hypothetical question to the vocational expert. *See id.* at 9-10. The ALJ made both of these determinations at step five in the sequential evaluation of his disability claim. *See* 20 C.F.R. §§404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v) (2008); *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) (limiting

consideration to the "particular points" raised in claimant's brief on appeal). Here, substantial evidence in the record supports the ALJ's findings.

First, the recommendations of the doctors in the record support the ALJ's residual functional capacity findings. *See* Tr. 269, 294, 303, 369, 371. Each of these doctors concludes that Pittman can return to work with some limitations similar to those listed by the ALJ, *see* Tr. 269 (Dr. Zerga); Tr. 294 (Dr. Burchett); Tr. 303 (Dr. Starkey), and Dr. Khan concludes that Pittman could return to work in June 2006 "without any restrictions." Tr. 272. Pittman's own testimony also supports this finding; he testified that while he had to stop working because of his seizures in February of 2006, he did not have another seizure after he began taking anti-seizure medication. *See* Tr. 40; *see also Hardaway v. Sec'y of Health and Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (finding there was substantial evidence supporting ALJ's finding of non-disability when the evidence indicated medication could significantly improve the claimant's condition). Furthermore, Lexapro improved Pittman's psychiatric symptoms to the point that he had no complaints, and he continued to take Prozac at the time of the hearing. *See* Tr. 407, 43; *see also Hardaway*, 823 F.2d at 927.

While Pittman argues specifically that the ALJ improperly disregarded evidence of his pulmonary impairment in making his decision, he does not direct the Court to evidence in the record supporting a pulmonary impairment. *See* R. 10 at 8–9. Other than respiratory distress during his seizures, *see* Tr. 172, 249, the medical records appear to contain no evidence of pulmonary impairment, *see* Tr. 267–383, 389–410. Furthermore, Pittman's chest x-ray on October 22, 2005, showed no acute pulmonary disease. Tr. 173. Thus, ALJ Rising was correct in excluding any pulmonary impairment when determining Pittman's residual functional

capacity.

The ALJ's rationale for rejecting certain evidence in determining Pittman's residual functional capacity is also supported by the record. Pittman claims that the ALJ "erred in failing to provide a specific rationale for rejecting this testimony" but fails to identify to what testimony he is referring. R. 10 at 8. While the Court need not consider such a generalized and cursory argument, *see Hollon ex rel. Hollon*, 447 F.3d at 490–91, ALJ Rising nevertheless fully explained his reasons for rejecting testimony inconsistent with his findings. Specifically, he justified his rejection of any inconsistent statements as to the severity, persistence, or limiting effects of Pittman's symptoms by explaining that the objective evidence did not support the severity of back and shoulder symptoms claimed by Pittman, that the various doctors concluded Pittman could return to work, and that Pittman's statements as to his termination of mental health treatment were inconsistent. Tr. 11–18. Thus, the ALJ's rationale is clear and his conclusion is supported by the evidence in the record.

Pittman also objects to the manner in which the ALJ posed a hypothetical question to the VE because Pittman asserts the ALJ failed to address his mood disorder. R. 10 at 10. His objection lacks merit. While a hypothetical question must accurately reflect the plaintiff's actual physical and mental impairments, *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987), it should describe limitations not conditions because determining the effect of a condition is outside the expertise of a vocational expert. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). That is exactly what the ALJ did here.

In determining what question to ask, the ALJ took into account each of Pittman's severe impairments when he determined Pittman's residual functional capacity. Specifically, the ALJ

determined that Pittman could perform medium exertional work with the additional limitation of only occasional overhead lifting with the left hand which accounted for the back and shoulder impairments discussed in the record. *See* Tr. 11–16. ALJ Rising also determined that Pittman needed to avoid commercial driving and exposure to unprotected heights or dangerous or moving machinery, which accounted for the risk posed by Pittman's history of seizures. *Id.* Finally, ALJ Rising determined that Pittman was limited to the performance of tasks in object-focused work setting with only infrequent and casual contact with others which accounted for his mood disorder. *Id.* Similarly, the ALJ took account of these impairments by listing each of these limitations when posing the hypothetical question to the VE. Tr. 51 ("Assume the person is limited to but capable of simple or detailed tasks, but in object-focused settings that involve infrequent or casual contact with others. Further assume they should be restricted from settings involving exposures to heights, hazards, dangerous or moving machinery, and no commercial driving. And assume further a medium exertional framework . . . [b]ut only occasional overhead lifting with the non-dominant left upper extremity."). Consequently, ALJ Rising's hypothetical accurately reflected Pittman's limitations, and he did not need to include the condition "mood disorder" because he accounted for Pittman's psychological issues by limiting social contact and requiring object-focused work in the hypothetical. *See* Tr. 51.

### III. CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment, R.10, is **DENIED**;

(2) Defendant's Motion for Summary Judgment, R. 11, is **GRANTED**; and,

(3) **JUDGMENT** in favor of the Defendant Commissioner will be entered

9

contemporaneously herewith.

This the 25th day of March, 2009.



Signed By:
*Amul R. Thapar* AT
United States District Judge